In the

# United States Court of Appeals

for the

# Fourth Circuit

_____

**Docket No.  15-4019**

_____

**UNITED STATES,**

**Appellee**

**v.**

**ROBERT F. MCDONNELL,**

**Defendant - Appellant**

_____

**AMICUS BRIEF OF FORMER VIRGINIA ATTORNEYS GENERAL
IN SUPPORT OF DEFENDANT'S MOTION
FOR RELEASE PENDING APPEAL**

_____

William H. Hurd (VSB No. 16967)
Stephen C. Piepgrass (VSB No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: 804.697.1200
Facsimile: 804.697.1339
E-mail:  william.hurd@troutmansanders.com
         stephen.piepgrass@troutmansanders.com

*Counsel for Andrew P. Miller, Anthony F. Troy,
J. Marshall Coleman, Mary Sue Terry, Stephen D. Rosenthal and
Mark L. Earley*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-4019__      Caption: __United States v. Robert F. McDonnell_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Andrew P. Miller_____
(name of party/amicus)

_____

who is _____Amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Stephen C. Piepgrass _____     Date: _____ January 16, 2015 _____

Counsel for: Andrew P. Miller _____

## CERTIFICATE OF SERVICE
****************************

I certify that on ___ January 16, 2015 ___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John L. Brownlee, et al.
Holland & Knight LLP (DC)
800 17th Street, N.W., Suite 1100
Washington, DC 20006
202-828-1854; john.brownlee@hklaw.com

Heather Hansen Martin, et al.
Quinn Emanuel Urquhart & Sullivan LLP
777 6th St NW, 11 Floor
Washington, DC 20001
202-756-1950; heathermartin@quinnemanuel.com

Charles M. Carberry, et al.
Jones Day
51 Louisiana Ave N.W.,
Washington, DC 20001
(202) 879-3939; carberry@jonesday.com

Michael S. Dry, et al.
U.S. Attorney's Office
600 E Main St
Richmond, VA 23219
(804) 819-5400; michael.s.dry@usdoj.gov

/s/ Stephen C. Piepgrass _____
(signature)

_____ January 16, 2015 _____
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-4019__        Caption: __United States v. Robert F. McDonnell_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Anthony F. Troy_____
(name of party/amicus)

_____

 who is _____Amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.      Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                        ☐ YES ☑ NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Stephen C. Piepgrass          Date: January 16, 2015

Counsel for: Anthony F. Troy

# CERTIFICATE OF SERVICE
**************************

I certify that on ___January 16, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John L. Brownlee, et al.
Holland & Knight LLP (DC)
800 17th Street, N.W., Suite 1100
Washington, DC 20006
202-828-1854; john.brownlee@hklaw.com

Heather Hansen Martin, et al.
Quinn Emanuel Urquhart & Sullivan LLP
777 6th St NW, 11 Floor
Washington, DC 20001
202-756-1950; heathermartin@quinnemanuel.com

Charles M. Carberry, et al.
Jones Day
51 Louisiana Ave N.W.,
Washington, DC 20001
(202) 879-3939; carberry@jonesday.com

Michael S. Dry, et al.
U.S. Attorney's Office
600 E Main St
Richmond, VA 23219
(804) 819-5400; michael.s.dry@usdoj.gov

/s/ Stephen C. Piepgrass                      January 16, 2015
(signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-4019__     Caption: __United States v. Robert F. McDonnell_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__J. Marshall Coleman_____
(name of party/amicus)

_____

who is _____Amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Stephen C. Piepgrass_____        Date: ____January 16, 2015____

Counsel for: J. Marshall Coleman_____

## CERTIFICATE OF SERVICE
**************************

I certify that on ___January 16, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John L. Brownlee, et al.
Holland & Knight LLP (DC)
800 17th Street, N.W., Suite 1100
Washington, DC 20006
202-828-1854; john.brownlee@hklaw.com

Heather Hansen Martin, et al.
Quinn Emanuel Urquhart & Sullivan LLP
777 6th St NW, 11 Floor
Washington, DC 20001
202-756-1950; heathermartin@quinnemanuel.com

Charles M. Carberry, et al.
Jones Day
51 Louisiana Ave N.W.,
Washington, DC 20001
(202) 879-3939; carberry@jonesday.com

Michael S. Dry, et al.
U.S. Attorney's Office
600 E Main St
Richmond, VA 23219
(804) 819-5400; michael.s.dry@usdoj.gov

/s/ Stephen C. Piepgrass_____        ____January 16, 2015____
        (signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-4019__     Caption: __United States v. Robert F. McDonnell_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mary Sue Terry_____
(name of party/amicus)

_____

 who is _____Amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                               ☐ YES ☑ NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Stephen C. Piepgrass _____    Date: ___ January 16, 2015 ___

Counsel for: Mary Sue Terry _____

# CERTIFICATE OF SERVICE
**************************

I certify that on ___ January 16, 2015 ___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John L. Brownlee, et al.
Holland & Knight LLP (DC)
800 17th Street, N.W., Suite 1100
Washington, DC 20006
202-828-1854; john.brownlee@hklaw.com

Heather Hansen Martin, et al.
Quinn Emanuel Urquhart & Sullivan LLP
777 6th St NW, 11 Floor
Washington, DC 20001
202-756-1950; heathermartin@quinnemanuel.com

Charles M. Carberry, et al.
Jones Day
51 Louisiana Ave N.W.,
Washington, DC 20001
(202) 879-3939; carberry@jonesday.com

Michael S. Dry, et al.
U.S. Attorney's Office
600 E Main St
Richmond, VA 23219
(804) 819-5400; michael.s.dry@usdoj.gov

/s/ Stephen C. Piepgrass _____        ___ January 16, 2015 ___
(signature)                                              (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-4019__    Caption: __United States v. Robert F. McDonnell_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Stephen D. Rosenthal_____
(name of party/amicus)

_____

 who is _____Amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.      Does party/amicus have any parent corporations?                ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐ YES ☑ NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Stephen C. Piepgrass          Date: ___January 16, 2015___

Counsel for: Stephen D. Rosenthal

# CERTIFICATE OF SERVICE
**************************

I certify that on ___January 16, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John L. Brownlee, et al.
Holland & Knight LLP (DC)
800 17th Street, N.W., Suite 1100
Washington, DC 20006
202-828-1854; john.brownlee@hklaw.com

Heather Hansen Martin, et al.
Quinn Emanuel Urquhart & Sullivan LLP
777 6th St NW, 11 Floor
Washington, DC 20001
202-756-1950; heathermartin@quinnemanuel.com

Charles M. Carberry, et al.
Jones Day
51 Louisiana Ave N.W.,
Washington, DC 20001
(202) 879-3939; carberry@jonesday.com

Michael S. Dry, et al.
U.S. Attorney's Office
600 E Main St
Richmond, VA 23219
(804) 819-5400; michael.s.dry@usdoj.gov

/s/ Stephen C. Piepgrass                              January 16, 2015
(signature)                                              (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-4019__     Caption: _United States v. Robert F. McDonnell_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Mark L. Earley_____
(name of party/amicus)

_____

 who is _____Amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.     Does party/amicus have any parent corporations?                           ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                               ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Stephen C. Piepgrass                    Date: ___January 16, 2015___

Counsel for: Mark L. Earley

## CERTIFICATE OF SERVICE
****************************

I certify that on ___January 16, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John L. Brownlee, et al.
Holland & Knight LLP (DC)
800 17th Street, N.W., Suite 1100
Washington, DC 20006
202-828-1854; john.brownlee@hklaw.com

Heather Hansen Martin, et al.
Quinn Emanuel Urquhart & Sullivan LLP
777 6th St NW, 11 Floor
Washington, DC 20001
202-756-1950; heathermartin@quinnemanuel.com

Charles M. Carberry, et al.
Jones Day
51 Louisiana Ave N.W.,
Washington, DC 20001
(202) 879-3939; carberry@jonesday.com

Michael S. Dry, et al.
U.S. Attorney's Office
600 E Main St
Richmond, VA 23219
(804) 819-5400; michael.s.dry@usdoj.gov

/s/ Stephen C. Piepgrass                              January 16, 2015
          (signature)                                        (date)

# <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................... ii

Interests of *Amici* ............................................................................ 1

Background ..................................................................................... 2

The convictions rest upon an overly-expansive interpretation
of what constitutes an "official act." .......................................... 3

   The Rule of Lenity ..................................................................... 5

   The First Amendment ................................................................ 6

   Federalism................................................................................... 7

   Avoiding Unreasonable Results ............................................... 8

The district court's overly-expansive interpretation of what constitutes
an "official act" would wreak havoc on the public life of Virginia......................... 8

Conclusion..................................................................................... 10

Certificate of Compliance ........................................................... 12

Certificate of Service................................................................... 123

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) ...............................................................5

*Dunn v. United States*,
442 U.S. 100 (1979) ...............................................................5

*Evans v. United States*,
504 U.S. 255 (1992) ...............................................................3

*Garrison v. La.*,
379 U.S. 64 (1964) ...............................................................6

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ...............................................................7

*Hoffman Estates v. Flipside, Hoffman Estates*,
455 U.S. 489 (1982) ...............................................................6

*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968) ...............................................................6

*Scheidler v. NOW, Inc.*,
547 U.S. 9 (2006) ...............................................................7

*United States v. Derrick*,
163 F.3d 799 (4th Cir. 1998) ...............................................................2

*United States v. Enmons*,
410 U.S. 396 (1973) ...............................................................7

*Webster v. Reprod. Health Servs.*,
492 U.S. 490 (1989) ...............................................................8, 9

*Wood v. Georgia*,
370 U.S. 375 (1962) ...............................................................6

STATUTES

18 U.S.C. § 3143 ...............................................................2, 5

Va. Code § 2.2-3103 ............................................................................................. 10

**RULE**

Fed. R. App. P. 29 .................................................................................................1

Six former Attorneys General of Virginia – Republican and Democratic – respectfully submit this brief to the Court as *amicus curiae* in support of Gov. Robert F. McDonnell's Motion for Release Pending Appeal ("the Motion").[1]

### Interests of *Amici*

This brief is submitted by the following former Attorneys General:

- Andrew P. Miller (D) (1970-77)
- Mary Sue Terry (D) (1986-93)
- Anthony F. Troy (D) (1977-78)
- Stephen D. Rosenthal (D) (1993-94)
- J. Marshall Coleman (R) (1978-82)
- Mark L. Earley (R) (1998-2001)[2]

While we held the office of Attorney General, we were charged with a variety of duties, including providing legal advice to the Governor of Virginia. This duty included providing any necessary advice related to the meaning of federal statutes potentially affecting a Governor's conduct in office. In addition, we were intimately involved in the public life of Virginia, understood its workings and actively engaged with citizens who sought to make their concerns heard by candidates and officeholders. Today, we have a continuing interest in promoting

---

[1]    No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting this brief. No person – other than *Amici* and their counsel – contributed money intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(b)(5).

[2]    These six *Amici* include all living former Attorneys General of Virginia, other than those (i) who are now serving as jurists in the Commonwealth, or (ii) who represent (or have represented) parties with interests in this case, or (iii) who, because of their subsequent service as Governor, are not perceived as speaking principally as former Attorneys General.

the orderly and fair application of the law, the conduct of government on sound and predictable principles, and broad participation in the democratic process.

We support the Motion because Gov. McDonnell's appeal of his conviction raises "a substantial question of law or fact likely to result in…reversal [or] an order for a new trial." 18 U.S.C. § 3143(b). The expansive interpretation of federal law on which his conviction is based is erroneous. It is completely alien to any legal advice that any of us would have given to any Governor of Virginia. Moreover, that expansive interpretation, if allowed to stand, would wreak havoc upon the public life of Virginia by casting a shadow of federal prosecution and imprisonment across normal participation in the democratic process.

## Background

Gov. McDonnell's conviction is based on alleged violations of the Hobbs Act and the honest services statute which, in a nutshell, prohibit a *quid pro quo* arrangement in which a public official is given something of value (the *quid*) in exchange for an "official act" (the *quo*). Gifts to public officials usually take the form of campaign contributions, not the personal gifts shown here; however, that distinction is *not* relevant for purposes of these federal statutes. *See, e.g.*, *United States v. Derrick*, 163 F.3d 799, 816-17 (4th Cir. 1998) ("[C]ampaign contributions may be the subject of a Hobbs Act violation, no less than any other payments."). Thus, the nature of the *quid* does not change what can constitute a *quo*. The sorts

2

of actions at issue here either are – or are not – "official actions" whether they are allegedly linked to campaign contributions or to anything else of value.

## The convictions rest upon an overly-expansive interpretation of what constitutes an "official act."

The statutes under which Gov. McDonnell was convicted require the performance of an "official act." *Evans v. United States*, 504 U.S. 255, 268 (1992) (noting that, to prove a violation of the Hobbs Act, the government must show "that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts").

A Governor clearly would be violating federal law (and state law) if, in exchange for something of value, he were, for example, to make a board appointment, or offer  a government job, or promulgate an executive order, or award a state contract, or expend public funds, or approve the adoption of a regulation, or sign or veto legislation. All of these are clearly "official actions" within the meaning of these federal statutes, because they involve the actual exercise of government power. As Attorneys General, we would have quickly and emphatically said so.

But, the conviction here is not based on the theory that Gov. McDonnell did any of these things, or anything similar. Instead, the district court gave jury instructions that defined "official action" far more broadly, so as to encompass various actions that Governors "customarily perform," but that are not part of their

official duties.[3] This instruction is especially troublesome given the nature of the actions alleged in the indictment, such as (i) ***arranging meetings*** for Jonnie Williams with Virginia government officials; (ii) ***hosting and attending*** events at the Governor's Mansion in order to ***encourage*** Virginia university researchers to initiate studies of anatabine and to promote Star Scientific's products to doctors; (iii) ***contacting*** other government officials to ***encourage*** Virginia state research universities to initiate studies of anatabine; (iv) ***allowing*** Jonnie Williams to ***invite*** individuals important to Star Scientific's business to exclusive events at the Governor's Mansion; and (v) ***recommending*** that senior government officials ***meet*** with Star Scientific executives.  *See* Indictment, ¶ 111(c).

As Attorneys General, none of us would have concluded that any of these actions – all involving access or speech – constitute "official acts" within the meaning of the federal statutes used by prosecutors here. We believe the jury

---

[3]    According to the jury instruction: "Official action … includes those actions that have been clearly established by ***settled practice*** as part of a public official's position, even if the action was not taken pursuant to responsibilities explicitly assigned by law. In other words, official actions may include acts that a public official ***customarily performs***, even if those actions are not described in any law, rule, or job description. And a public official need not have actual or final authority over the end result sought by a bribe payor so long as the alleged bribe payor reasonably believes that the public official had influence, power or authority over a means to the end sought by the bribe payor. In addition, official action can include actions taken in furtherance of longer-term goals, and an official action is no less official because it is one in a series of steps to exercise influence or achieve an end." *See* Tr. Vol. XXVI, at 6102:23-6103:14 (emphasis added).

4

instruction defining "official acts" is in error – an error which, even standing alone, is sufficient for a "reversal [or] order for a new trial." 18 U.S.C. § 3143(b).

Our views on the reach of these federal statutes are informed by four important principles of statutory construction:

**The Rule of Lenity:** As Attorneys General, we were – and are – acutely aware of the importance of giving fair notice as to what the criminal law prohibits. Fair notice is a component of constitutional due process, and it is often manifested in "the rule of lenity," which is the long-established practice of resolving questions concerning the ambit of a criminal statute in favor of the defendant. This rule is "rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 112 (1979) (citations omitted).

In our view, the interpretation of law – and resulting jury instructions – on which the conviction is based violate the rule of lenity because they blur the line between (i) taking an "official act," to which these federal statutes apply, and (ii) granting or facilitating access to government officials, which courts have repeatedly held does not constitute an official act. *E.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 360 (2010) ("[i]ngratiation and access . . . are not corruption"). Indeed, all five "official actions" alleged in the indictment appear to us as nothing more than granting or facilitating access. If such acts can form the

basis for Gov. McDonnell's conviction, it will be anyone's guess as to where the line between lawful and unlawful acts might be drawn. There will be no fair notice as to what the law prohibits. Due process – and the rule of lenity – will be violated.

**The First Amendment:** The need for fair notice is especially acute here because at least some of the actions alleged in the indictment – and for which Gov. McDonnell was convicted – fall within the category of ***speech.*** Thus, any statute that is purported to prohibit them must be interpreted and limited in light of First Amendment jurisprudence.[4] As Attorneys General, we understood full well that any statute restricting speech must be absolutely clear in what it prohibits. *E.g., Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982) ("If … the law interferes with the right of free speech or of association, a more stringent vagueness test should apply."). This principle applies here. To be clear, the issue is not whether Congress *could* prohibit an elected official from favoring a contributor with the sort of speech described in the indictment. The point is that, if Congress is to impose such a prohibition on speech, it may do so only through a statute that leaves no doubt about its meaning. As applied by the district court, the federal statutes at issue are too vague to pass such a test.

---

[4]    Speech by a public official falls within the ambit of the First Amendment, at least where there is no verbal act involving the actual exercise of governmental power. *See, e.g., Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Garrison v. La.*, 379 U.S. 64 (1964); *Wood v. Georgia*, 370 U.S. 375 (1962).

**Federalism:** The federal statutes at issue here derive their legitimacy not from some general power of Congress to enact ethics rules for state officials (no such power exists), but from the power of Congress to regulate interstate commerce. *See, e.g.*, *Scheidler v. NOW, Inc*., 547 U.S. 9, 17-18 (2006) (noting that the Commerce Clause granted Congress the authority to enact the Hobbs Act). Even so, these statutes obviously are not ordinary Commerce Clause regulations. They threaten to punish state officials, including state governors, for certain actions while in office, thereby taking responsibility for such matters away from the States. As such, these statutes alter the federal-state balance.

"If Congress intends to alter the usual constitutional balance between the state and federal governments, it must make its intention to do so *unmistakably clear* in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991) (emphasis added) (internal quotation marks and citations omitted). "Congress should make its intention *clear and manifest* if it intends to pre-empt the historic powers of the States." *Id.* at 461 (emphasis added) (internal quotation marks and citations omitted). Indeed, "[i]nasmuch as [the Supreme] Court . . . has left primarily to the political process the protection of the States against intrusive exercises of Congress' Commerce Clause powers, we must be *absolutely certain* that Congress intended such an exercise." *Id.* at 464 (emphasis added). *See also United States v. Enmons*, 410 U.S. 396, 411-12 (1973).

7

The expansive interpretation of "official acts" on which the conviction is based cannot meet this rigorous standard. It is neither "unmistakably clear" nor "clear and manifest" that Congress intended to punish the sorts of activities described in the indictment. Nor can the Court be "absolutely certain" that Congress intended such a result. The conviction cannot stand.

**Avoiding Unreasonable Results:** As former Attorneys General who often issued opinions interpreting statutes, we are mindful of the canon of construction that seeks to avoid unreasonable results. *See, e.g.*, *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 515 (1989) ("the law favors constructions which harmonize with reason, and which tend to avoid unjust, absurd, unreasonable or confiscatory results, or oppression."). The district court's overly-expansive interpretation of federal law would violate this canon by casting a shadow of federal prosecution and imprisonment across normal participation in the democratic process.

### The district court's overly-expansive interpretation of "official act" would wreak havoc on the public life of Virginia.

As noted earlier, what constitutes an "official action" does not change based on the nature of the contribution given to the officeholder. Whatever definition is applied here also must apply in future cases where the gifts are fully-reported contributions of campaign funds. If the acts at issue here constitute "official acts" of the Governor for purposes of federal criminal law, then *any* favorable and customary treatment by an officeholder – including meeting with a citizen or a

simple nod of approval – would constitute "official acts" as well. This would pose serious problems both for the officeholder as well as the citizen.

Living under such a restrictive regimen, future Attorneys General would be well-advised to counsel their Governors to abstain from *any* favorable treatment of *any* campaign contributor, lest they risk being accused of having engaged in a *quid pro quo* transaction in violation of federal law. This would have far-reaching consequences affecting many actions in which Governors customarily have engaged.  It would affect, for example, whom Governors can invite into their home, the Executive Mansion; what personal introductions they can facilitate; whom Governors can invite on trade missions; and whom Governors (or other officeholders) can meet to discuss government business.

The interpretation of "official action" reflected in the jury instructions implicitly includes all such customary activities and, thus, subjects the officeholder to the risk of federal prosecution if favoritism is shown to a contributor. Such results are unjust, unreasonable and, indeed, absurd. *See id*. Moreover, these federal statutes apply not just to the officeholders who received the contributions; they also apply to the citizens who gave them.

In sum, to apply the federal statutes as required by the jury instructions would either (i) expand those statutes suddenly and without warning to prohibit practices that are long-established as part of the democratic process, or (ii) make

those statutes so vague as to leave no clear idea at all where they draw the line. Either of these results would wreak havoc on the public life of Virginia.

We believe the Court will reject such an unprecedented and disruptive interpretation. At the very least, there is a substantial question of law warranting an order allowing for Gov. McDonnell to be released pending appeal.

## Conclusion

As former Attorneys General, we recognize that some of the gifts at issue here may give the appearance of impropriety, but that is a different issue from whether there has been a violation of those federal laws – prohibiting a *quid pro quo* involving an official action – that are purportedly the basis for the conviction.[5] The Motion should be granted, and we respectfully urge the Court to do so.

ANDREW P. MILLER,
ANTHONY F. TROY,
J. MARSHALL COLEMAN,
MARY SUE TERRY,
STEPHEN D. ROSENTHAL, and
MARK L. EARLEY

By:   /s/ William H. Hurd

   /s/ Stephen C. Piepgrass
Counsel

---

[5]    Moreover, without opining upon their potential application here, we note that Virginia already has in place statutes that address situations where gifts to an officeholder create an appearance of impropriety. *See* Va. Code § 2.2-3103(8) & (9). The district court's expansion of federal law is as unnecessary as it is unwarranted.

10

William H. Hurd (VSB No. 16967)
Stephen C. Piepgrass (VSB No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point, P.O. Box 1122
Richmond, Virginia 23219
Telephone: 804.697.1200
Facsimile: 804.697.1339
Email: william.hurd@troutmansanders.com
Email: stephen.piepgrass@troutmansanders.com

11

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 29(D)</u>

I certify that the foregoing brief complies with Fed. R. App. P. 29(d), which provides that an amicus brief may be no more than one-half the maximum length authorized by the Rules for a party's principal brief. Specifically, this brief (excluding the parts of the brief exempted under the Rules) contains 10 pages, which is one-half of the 20 pages allotted to a principal party for a motion under Fed. R. App. P. 27(d)(2).

I further certify that this brief was prepared using 14 point Times New Roman font, using Microsoft Office Word 2007.

By: _____ /s/ Stephen C. Piepgrass _____
Stephen C. Piepgrass (VSB No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone No.: (804) 697-1320
Facsimile No.: (804) 698-5147
Email: stephen.piepgrass@troutmansanders.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2015, I filed a true and correct copy of the foregoing on the Court's Electronic Case Filing System, which will send a notice of electronic filing to:

Counsel for Robert F. McDonnell:        Counsel for Maureen McDonnell:

John L. Brownlee, *et al.*               Heather Hansen Martin, *et al.*
Holland & Knight LLP (DC)                Quinn Emanuel Urquhart & Sullivan LLP
800 17th Street, N.W.                    777 6th St NW
Suite 1100                               11 Floor
Washington, DC 20006                     Washington, DC 20001
202-828-1854                             202-756-1950
Email: john.brownlee@hklaw.com           Fax: 202-756-1951
                                         Email: heathermartin@quinnemanuel.com

Charles M. Carberry, *et al.*
Jones Day (DC-NA)
51 Louisiana Ave NW
Washington, DC 20001
(202) 879-3939
Fax: (202) 626-1700
Email: carberry@jonesday.com

                    Counsel for the United States:

                    Michael S. Dry, *et al.*
                    U.S. Attorney's Office
                    600 E Main St
                    18th Fl
                    Richmond, VA 23219
                    (804) 819-5400
                    Email: michael.s.dry@usdoj.gov

By: _____/s/ Stephen C. Piepgrass_____
Stephen C. Piepgrass (VSB No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone No.: (804) 697-1320
Facsimile No.: (804) 698-5147
Email: stephen.piepgrass@troutmansanders.com

24601419v1