No. 15-4019

IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROBERT F. MCDONNELL,

*Defendant-Appellant.*

On Appeal From the United States District Court
For the Eastern District of Virginia
The Honorable James R. Spencer

**BRIEF OF AMICUS CURIAE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF APPELLANT AND URGING REVERSAL**

David B. Smith
SMITH & ZIMMERMAN, PLLC
108 North Alfred Street
Alexandria, VA  22314
Telephone:  (703) 548-8911
NACDL Amicus Committee
Vice-Chair for the Fourth Circuit

John D. Cline
LAW OFFICE OF JOHN D. CLINE
235 Montgomery St., Suite 1070
San Francisco, CA  94104
Telephone:  (415) 322-8319

Attorneys for Amicus Curiae
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF AMICUS CURIAE .................................................................... 1

INTRODUCTION ............................................................................................... 2

ARGUMENT ....................................................................................................... 3

I.    THE DISTRICT COURT'S "OFFICIAL ACT" INSTRUCTION IMPROPERLY ALTERED THE FEDERAL-STATE BALANCE WITHOUT A CLEAR STATEMENT FROM CONGRESS ........................ 3

     A.    The "Clear Statement" Rule .................................................................. 4

     B.    The Virginia Regulatory Scheme. ........................................................ 6

     C.    Congress Has Not Made a "Clear Statement" That Mr. McDonnell's Conduct Amounted to "Official Acts" ........................................................ 9

II.   AMBIGUOUS CRIMINAL PROVISIONS MUST BE INTERPRETED STRICTLY AGAINST THE GOVERNMENT ..................................................... 10

CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Bond v. United States*,
   134 S. Ct. 2077 (2014) .................................................................... 4, 5, 9

*Cleveland v. United States*,
   531 U.S. 12 (2000) ............................................................................. 4, 5

*Jones v. United States*,
   529 U.S. 848 (2000) ........................................................................... 4, 6

*McNally v. United States*,
   483 U.S. 350 (1987) .......................................................................... 5, 10

*Rewis v. United States*,
   401 U.S. 808 (1971) ................................................................................ 5

*Scheidler v. NOW*,
   537 U.S. 393 (2003) .............................................................................. 10

*Skilling v. United States*,
   561 U.S. 358 (2010) .............................................................................. 10

*United States v. Bass*,
   404 U.S. 336 (1971) ................................................................................ 6

*United States v. Brumley*,
   116 F.3d 728 (5th Cir. 1997) (en banc) ............................................... 5, 7

*United States v. Panarella*,
   277 F.3d 678 (3d Cir. 2002) .................................................................... 5

*United States v. Ratcliff*,
   488 F.3d 639 (5th Cir. 2007) ............................................................... 6, 9

*Williams v. United States*,
   458 U.S. 279 (1982) ................................................................................ 4

*Yates v. United States*,
   2015 U.S. LEXIS 1503 (Feb. 25, 2015) ............................................... 10

## Statutes and Rules

18 U.S.C. § 1346 ............................................................................................... 5

18 U.S.C. § 1952 ............................................................................................... 5

Va. Code Ann. § 2.2-3101 ............................................................................. 3, 6

Va. Code Ann. § 2.2-3103 ............................................................................. 6, 7

Va. Code Ann. § 2.2-3113 ............................................................................... 7

Va. Code Ann. § 2.2-3114 ............................................................................... 7

Va. Code Ann. § 2.2-3117 ............................................................................... 7

Va. Code Ann. § 2.2-3120 ............................................................................... 7

Va. Code Ann. § 2.2-3126 ............................................................................ 7, 8

Fed. R. App. P. 29 ............................................................................................ 1

Amicus curiae National Association of Criminal Defense Lawyers ("NACDL") respectfully submits this brief in support of appellant Robert F. McDonnell and urging reversal.[1]

## INTEREST OF AMICUS CURIAE

NACDL is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct.

NACDL was founded in 1958. It has a nationwide membership of approximately 10,000 and an affiliate membership of more than 40,000. NACDL's members include private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL is the only nationwide professional bar association for public defenders and private criminal defense lawyers. The American Bar Association recognizes NACDL as an affiliated organization and awards it full representation in its House of Delegates.

NACDL files numerous amicus briefs each year in the Supreme Court and other courts, seeking to provide amicus assistance in cases that present issues of

---

[1] Amicus states that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person--other than amicus, its members, and its counsel--contributed money that was intended to fund preparing or submitting the brief. Fed. R. App. P. 29(c)(5).

1

broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system as a whole.

NACDL works to resist overcriminalization--the steady expansion of federal crimes, through new criminal statutes and broad interpretations of existing statutes by the executive and judicial branches.[2] The bribery charges in this case--alleged as honest services and Hobbs Act violations--implicate two of the core problems of overcriminalization: the federalizing of crimes traditionally reserved for state jurisdiction, and the ambiguous criminalization of conduct without meaningful definition or limitation. NACDL's views on these matters will assist the Court in deciding whether the district court's instruction on the "official act" element impermissibly broadened the scope of the statutes at issue.

The parties, through counsel, consent to the filing of this brief.

## INTRODUCTION

The counts of conviction charge that then-Governor McDonnell took or agreed to take "official acts" in return for gifts he and his family members allegedly received from Jonnie R. Williams, Sr. The district court's instruction on the "official act" element erroneously permitted conviction for routine political activity that public officials engage in every day on behalf of their supporters. This expansion of the federal corruption statutes, in conflict with decisions from other

---

[2] For a description of NACDL's efforts to reduce overcriminalization, see https://www.nacdl.org/overcrim/.

2

Circuits, represents a dangerous and unjustified extension of federal criminal law into an area traditionally regulated by the states. The Court should reverse Mr. McDonnell's conviction based on the erroneous instruction.[3]

## ARGUMENT

The district court's unbounded interpretation of the "official act" element conflicts with at least two fundamental principles that constrain the scope of federal criminal statutes: (1) that, absent a clear statement from Congress, a federal criminal statute should not be interpreted to alter the federal-state balance in prosecuting crime, and (2) that, under the rule of lenity, ambiguities in criminal statutes must be resolved against the prosecution. Under these principles, the district court's "official act" instruction represents an impermissible expansion of the honest services statute and the Hobbs Act.

**I.   THE DISTRICT COURT'S "OFFICIAL ACT" INSTRUCTION IMPROPERLY ALTERED THE FEDERAL-STATE BALANCE WITHOUT A CLEAR STATEMENT FROM CONGRESS.**

The Commonwealth of Virginia, through its elected representatives, has established a comprehensive statutory scheme regulating gifts to state officials. Va. Code Ann. § 2.2-3101 et seq. Violations of some provisions of the statute

---

[3] Mr. McDonnell argues as well that the evidence was insufficient on the "official act" element. Principal Brief of Defendant-Appellant Robert F. McDonnell ("A. Br.") at 44-49. NACDL considers this argument well-founded, but focuses on the legal principles at issue in the "official act" jury instruction because of their wide application to other cases.

3

constitute state misdemeanors; other violations are punishable solely through noncriminal means, including loss of office, civil penalties, and forfeiture. Here, there was no contention that Mr. McDonnell violated any of these state provisions; as the district court instructed the jury, "[t]here has been no suggestion in this case that Mr. McDonnell violated Virginia law." XXVI T. 6125. This federal prosecution thus marks an extraordinary intrusion by federal prosecutors into an area of traditional state regulation. As the Supreme Court has held, federal prosecutors may usurp state jurisdiction in this manner only where Congress clearly authorizes it. No such clear authority exists here.

### A.   The "Clear Statement" Rule.

The Supreme Court has repeatedly recognized that use of broadly worded federal crimes to prosecute matters traditionally regulated by the states raises federalism concerns. *See, e.g., Bond v. United States*, 134 S. Ct. 2077, 2091 (2014) (declining to read 18 U.S.C. § 229 broadly to "alter sensitive federal-state relationships") (quotation omitted); *Cleveland v. United States*, 531 U.S. 12, 24 (2000) (declining to extend the mail fraud statute to "a wide range of conduct traditionally regulated by state and local authorities"); *Jones v. United States*, 529 U.S. 848, 858 (2000) (same; interpreting federal arson statute); *Williams v. United States*, 458 U.S. 279, 290 (1982) (construing statute narrowly in part because the case involved "a subject matter that traditionally has been regulated by state law");

4

*Rewis v. United States*, 401 U.S. 808, 812 (1971) (construing 18 U.S.C. § 1952 and rejecting a broad interpretation where it "would alter sensitive federal-state relationships").

Federal-state tension becomes particularly acute when federal prosecutors turn broadly worded federal statutes against local elected officials. As the en banc Fifth Circuit observed in interpreting the honest services statute: "We find nothing to suggest that Congress was attempting in § 1346 to garner to the federal government the right to impose upon states a federal vision of appropriate services--to establish, in other words, an ethical regime for state employees. Such a taking of power would sorely tax separation of powers and erode our federalist structure." *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997) (en banc); *see, e.g., McNally v. United States*, 483 U.S. 350, 360 (1987) (declining to read mail fraud statute in a way that would "involve[] the Federal Government in setting standards of disclosure and good government for local and state officials"); *United States v. Panarella*, 277 F.3d 678, 693 (3d Cir. 2002) (same).

To address these federalism concerns, the Supreme Court has held that, absent a clear statement of Congressional intent, the federal government may not intrude into areas of criminal law enforcement traditionally left to the states. *See, e.g., Bond*, 134 S. Ct. at 2088 ("The problem with this interpretation is that it would dramatically intrude upon traditional state criminal jurisdiction, and we

5

avoid reading statutes to have such reach in the absence of a clear indication that they do.") (quotation and brackets omitted); *Cleveland*, 531 U.S. at 25 ("[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in the prosecution of crimes." (quotation omitted)); *Jones*, 529 U.S. at 858 (same); *United States v. Bass*, 404 U.S. 336, 349 (1971) ("[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance.").

### B. The Virginia Regulatory Scheme.

The "clear statement" principle applies with particular force here, because this federal prosecution intrudes directly into an intricate and carefully calibrated system of state regulation. *See, e.g., United States v. Ratcliff*, 488 F.3d 639, 648-49 (5th Cir. 2007) (rejecting application of mail fraud statute to local election fraud in part because "Louisiana law establishes a comprehensive regulatory system governing campaign contributions and finance disclosures for state and local elections, with state civil and criminal penalties in place for making misrepresentations on campaign finance disclosure reports").

In 1987, a special session of the Virginia General Assembly enacted the State and Local Government Conflict of Interests Act, Va. Code Ann. § 2.2-3101 et seq. ("the Act"). Section 2.2-3103--titled "Prohibited conduct"--forms the heart of the Act. That section contains a series of carefully drawn prohibitions

6

applicable to any "officer or employee of a state or local governmental or advisory agency," including the Governor. Knowing violations of some categories of prohibited conduct constitute state misdemeanors. Va. Code Ann. § 2.2-3120. For other categories of conduct--which, in *Brumley*'s words, address only "appearances of corruption," 116 F.3d at 734--the statute declares that "[v]iolations . . . shall not be subject to criminal law penalties." Va. Code Ann. § 2.2-3103(8), (9).

In addition to the prohibitions in § 2.2-3103, the Act requires public officials--including the Governor--to make annual, detailed disclosures of certain "personal and financial interests," including gifts from third parties to the official, his spouse, or other immediate family members. Va. Code Ann. §§ 2.2-3113, -3114, -3117. Knowing violations of the disclosure requirements constitute misdemeanors. *Id*. § 2.2-3120.

The Act assigns a crucial role to the Virginia Attorney General. First, the Attorney General provides advisory opinions on the application of the Act to state officers or employees who request them. *Id*. § 2.2-3126(A)(3). Second, the Attorney General has the power to investigate potential violations of the Act that come to his attention. *Id*. § 2.2-3126(A)(1). Finally, and critically, the Act provides that if the Attorney General "determines that there is a reasonable basis to conclude that any officer or employee serving at the state level of government has knowingly violated any provision of this chapter, he shall designate an attorney for

7

the Commonwealth who shall have complete and independent discretion in the prosecution of such officer or employee." *Id*. § 2.2-3126(A)(2). The low threshold ("reasonable basis to conclude") for the Attorney General's designation of a Commonwealth Attorney to prosecute, and the "complete and independent discretion" of the Commonwealth Attorney once designated, ensure that partisan political considerations play as small a role as possible in the Act's enforcement.

The investigative and enforcement process established in the Act worked as intended here until the federal prosecution intervened. Then-Attorney General Ken Cuccinelli designated Commonwealth Attorney Michael Herring (a Democrat) to investigate potential state charges against the McDonnells. Mr. Herring investigated the allegations and would have made an independent charging decision but for the federal interference that this case represents. That charging decision may well have been favorable to Mr. McDonnell; as the district court instructed the jury, "[t]here has been no suggestion in this case that Mr. McDonnell violated Virginia law," XXVI T. 6125, including the Act. But there is no way to know for sure, because Mr. Herring ended his investigation once federal charges were brought.[4] Although the federal courts "have traditionally viewed the exercise

---

[4] *See* Rosalind S. Helderman, *State To Drop Investigation of McDonnell Without Charges*, The Washington Post (Jan. 27, 2014), available at http://www.washingtonpost-.com/local/virginia-politics/no-state-charges-in-mcdonnell-investigation/2014/01/27/979cb7a8-8786-11e3-833c-33098f9e5267_story.html.

8

of state officials' prosecutorial discretion as a valuable feature of our constitutional system," *Bond*, 134 S. Ct. at 2092, the federal prosecutors here chose to preempt that discretion. They chose, in other words, to "displace[] the public policy of the Commonwealth of [Virginia], enacted in its capacity as sovereign." *Id.* at 2093 (quotation omitted).[5]

### C. Congress Has Not Made a "Clear Statement" That Mr. McDonnell's Conduct Amounted to "Official Acts."

The obvious clash between this federal prosecution and the Act's "comprehensive regulatory system" warrants careful adherence to the "clear statement" principle in determining whether the Hobbs Act and the honest services statute sweep as broadly as the district court found. *Ratcliff*, 488 F.3d at 648-49. Under that principle, the district court's "official act" instruction impermissibly expanded the statutes' scope. The instruction permitted the jury to convict Mr. McDonnell for accepting gifts from Mr. Williams in exchange for attending events and arranging access to other public officials. Congress has made no statement at all that such conduct involves "official acts," much less the "clear statement" that

---

[5] Despite the district court's instruction that there was no suggestion Mr. McDonnell had violated Virginia law, the government introduced his state disclosure forms into evidence, cross-examined him and other witnesses about them, and suggested that he had completed them improperly. The district court compounded the harm from this evidence by excluding defense expert testimony that would have explained the forms. A.Br. 80-82. Thus, this federal prosecution not only invaded an area traditionally regulated by the state; it also used Mr. McDonnell's compliance with state law requirements misleadingly as evidence that he had violated federal law.

9

the Supreme Court requires. Under federal law, an "official act" requires a decision or other action on a pending governmental matter. The mere attending of events or arranging of access, without either taking action on a pending governmental matter or pressuring someone else to take action, does not meet that standard.

## II. AMBIGUOUS CRIMINAL PROVISIONS MUST BE INTERPRETED STRICTLY AGAINST THE GOVERNMENT.

Federalism concerns are reason enough to construe narrowly the "official act" element of the corruption charges. But there is a second, equally fundamental reason: the rule of lenity.

Under the rule of lenity, "when there are two rational readings of a criminal statute, one harsher than the other, [the Court is] to choose the harsher only when Congress has spoken in clear and definite language." *McNally*, 483 U.S. at 359-60; *see, e.g., Yates v. United States*, 2015 U.S. LEXIS 1503, at *31-*32 (Feb. 25, 2015) (plurality opinion) (same); *Skilling v. United States*, 561 U.S. 358, 410-11 (2010) (applying rule of lenity to honest services statute); *Scheidler v. NOW*, 537 U.S. 393, 409 (2003) (applying rule of lenity to Hobbs Act).

In a case such as this, where the government advances an expansive interpretation of federal law against a state official in an area covered by comprehensive state regulation, the "fair warning" principle is especially critical. A state official might readily believe that state law fully defines his ethical

10

obligations as an officeholder. It is unlikely that any state official, having concluded that his conduct is lawful under state law (as Mr. McDonnell's conduct indisputably was), would go on to consider whether that conduct might nonetheless violate the Hobbs Act or the honest services statute. If these statutes are to displace state law, fairness demands that courts permit them to do so only when the state officeholder's conduct falls unambiguously within their scope.

For the reasons outlined in appellant's brief, the "official act" element of the Hobbs Act and the honest services statute does not encompass Mr. McDonnell's conduct (attending events and arranging access to other public officials) at all, much less unambiguously so. Under the rule of lenity, therefore, the district court's instruction permitting conviction for that conduct was erroneous.

## CONCLUSION

For the foregoing reasons. amicus NACDL submits that the "official act" instruction was erroneous and Mr. McDonnell's conviction should be reversed.

DATED: March 6, 2015                     Respectfully submitted,

        /s/ John D. Cline
John D. Cline


Attorney for Amicus Curiae
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief is proportionately spaced, has a typeface of 14 points, and contains 2442 words.

                                            */s/   John D. Cline*
                                            John D. Cline
                                            Attorney for Amicus Curiae NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS

# CERTIFICATE OF SERVICE

## When All Case Participants Are Registered For
## The Appellate CM/ECF System

U.S. Court of Appeals Docket Number: 15-4019

I hereby certify that on the 6th day of March, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. In addition, I emailed copies of the foregoing to counsel for the parties.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

      /s/   John D. Cline
      John D. Cline